UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 24-13394-JGR |
| WESTERN RISE, INC. ) | |
| ) | Chapter 11, Subchapter V |
| Debtor. ) | |

**PLAN OF REORGANIZATION DATED SEPTEMBER 17, 2024 FOR SMALL BUSINESS UNDER CHAPTER 11, SUBCHAPTER V**

Western Rise, Inc. ("Western" or "Debtor"), Debtor and Debtor-in-Possession herein, sets forth its Plan of Reorganization Dated September 17, 2024 as follows:

### I. INTRODUCTION

1.1 - This document constitutes the Plan of Reorganization for the Debtor. This document is designed to provide all creditors and parties in interest with sufficient information with which to make an informed vote as to the acceptance or rejection of the Debtor's Plan.

1.2 - Any terms which are set forth in this document and defined in the Bankruptcy Code shall have the meaning attributed to them as set forth on Appendix 1 attached hereto.

1.3 - Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting. Each holder of an Allowed Claims in Classes 3 through 9 shall be entitled to vote to accept or reject the Plan.

1.4 - Regardless of creditor votes, if the Plan meets all of the applicable requirements of Section 1129(a) of the Bankruptcy Code, other than subsections (8), (10), and (15), the Court may confirm the Plan if it does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

1.5 - As discussed more fully below, the Debtor firmly believes that the Plan represents the best alternative for providing the maximum value for creditors. The Plan provides creditors

with a distribution on their Claims in an amount greater than any other potential known option available to the Debtor.

1.6 - THIS PLAN AND THE DISCLOSURES CONTAINED HEREIN HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION. THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS PLAN.

## II. HISTORY AND EVENTS LEADING TO BANKRUPTCY

Debtor is a Delaware corporation with its principal place of business located in Telluride, Colorado. The Debtor is a performance travel apparel company. It designs and sells versatile clothing using performance fabrics that can transition across activities.

Debtor designs the clothing but does not manufacture them. Generally speaking, that means the Debtor needs to pay for items before receipt. This caused the Debtor to quickly diminish its cash position which it tried to supplement by taking out new and more loans – loans it could not service. Compounding the issue were loans the Debtor took from PayPal and Shopify – loans that allowed those creditors to take money directly from the Debtor on a weekly basis at an unsustainable rate. This caused the Debtor to fall behind with its lenders and its manufacturer, leading to the Debtor seeking protection under Subchapter V of Chapter 11.

**PLAN OVERVIEW AND CLASSIFICATION OF CLAIMS AND INTERESTS**

*Overview of Plan Treatment*

| CLASS | STATUS | TREATMENT |
|---|---|---|
| Class 1 - Allowed Administrative Claims | Unimpaired | Allowed Administrative Claims will be paid in full on the Effective Date or as otherwise agreed to between the Debtor and the implicated Claimant. |
| Class 2 – Allowed Priority Tax Claims | Unimpaired | Allowed Priority Tax Claims, to the extent they exist, will be paid in full on the Effective Date. |
| Class 3 – Allowed Secured Claim of GZ Impact Fund I, L.P., d/b/a Greenline Ventures | Impaired | Greenline's Claim will be allowed in the principal sum of $1,659,809.80, which claim shall be amortized over 30-years at 11.5% interest and will come due within three (3) years of Effective Date. The Debtor shall make monthly payments to Greenline of $16,436.95 for 36-months at which point it will satisfy Greenline's claim in full. |

| | | |
|---|---|---|
| Class 4 – Claim of B Side Capital, f/k/a Colorado Lending Source | Impaired | B Side asserts a secured claim in the sum of $14,028.82, with the claim secured by all of the assets of the Debtor. The Debtor disputes the secured status of that claim. To the extent B Side's claim is allowed as secured, B Side shall have an allowed secured claim in the sum of $14,028.82, which claim shall accrue interest at the rate of 11.5% per annum and be amortized over 36-months. To the extent B Side's secured claim is allowed, the Debtor will make monthly payments to B Side on account of that claim in the sum of $462.61 for 36-months until paid in full. To the extent the secured status of B Side's claim is disallowed, it will have an allowed general unsecured claim that will be treated in accordance with the other general unsecured claims in Class 9. |
| Class 5 – Allowed Claim of First Southwest Community Fund | Impaired | First Southwest Community Fund asserts a secured claim in the sum of $72,808.00, with the claim secured by all of the assets of the Debtor. The Debtor disputes the secured status of that claim. To the extent First Southwest's claim is allowed as secured, First Southwest shall have an allowed secured claim in the sum of $72,808.00, which claim shall accrue interest at the rate of 11.5% per annum and be amortized over 36-months. To the extent First Southwest's secured claim is allowed, the Debtor will make monthly payments to First Southwest on account of that claim in the sum of $2,400.92 for 36-months until paid in full. To the extent the secured status First Southwest's claim is disallowed, it will have an allowed general unsecured claim that will be treated in accordance with the other general unsecured claims in Class 9. |
| Class 6 – Allowed Claim of The S Group | Impaired | The S Group asserts a secured claim in certain inventory of the Debtor. Under this Plan, the Debtor will consent to The S Group selling the inventory it produced for the Debtor and which is within The S Group's possession. The S Group shall have an allowed general unsecured claim in Class 9 for any deficiency after that sale has been completed. |

| | | |
|---|---|---|
| Class 7 – Allowed Claim of WebBank (Shopify) | Impaired | Treated as a wholly unsecured creditor pursuant to 11 U.S.C. § 506 in Class 9. |
| Class 8 – Allowed Claim of WebBank (PayPal) | Impaired | Treated as a wholly unsecured creditor pursuant to 11 U.S.C. § 506 in Class 9. |
| Class 9 - General Unsecured Creditors | Impaired | Class 9 shall receive quarterly payments beginning at the end of the fourth quarter of Year 3 of the Plan, and at the end of 3rd and 4th quarters of Year 4 of the Plan. The distribution to general unsecured creditors will be calculated by taking the ending cash balance at the end of each calendar quarter and providing a distribution to general unsecured creditors equal to 25% of the closing cash balance at the end of the quarter. The Plan estimates paying the sum of $540,693.06 to general unsecured creditors over the 4-year plan term. |
| Class 10 – Interests in Western Rise | Unimpaired | All equity interests shall be retained by Class 10 Equity Interest Holders on the Effective Date of the Plan. |

## III. DESCRIPTION OF ASSETS

The value of the Debtor's assets, owned on the Petition Date unless otherwise noted, are set forth in the following chart:

| **Asset** | **Estimated Value** |
|---|---|
| Bank accounts (Petition Date value) | $30,546.87 |
| Accounts Receivable | $35,159.00 |
| Inventory | $300,000.00 |
| Office Equipment and Furniture | $2,000 |
| **Total** | $367,705.87 |

The Debtor's primary assets are its inventory. The value of the Inventory described above is its projected value if sold <u>at a liquidation</u> not via continued operations. The Debtor's primary value to its creditors, therefore, is through continued operations. As will be described in greater detail below, in a liquidation there will be minimal – if any – recovery on behalf of general

unsecured creditors.

## IV. UNCLASSIFIED CLAIMS

### A. UNCLASSIFIED PRIORITY CLAIMS

Claims which are more particularly defined under Section 507(a)(1), 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and will be paid in full on the Effective Date of the Plan. These claims consist of administrative expenses incurred during the course of the Chapter 11 case, claims incurred in an involuntary case (which are not applicable) and certain priority tax claims.

### B. CLASS 1: ALLOWED ADMINISTRATIVE EXPENSE CLAIMS

Debtor hired the law firm of Kutner Brinen Dickey Riley, P.C. ("KBDR") to represent it in this case. KBDR was paid a retainer of $12,862.00. As of the date of this Plan, KBDR has not sought approval of any fees in the case. KBDR expects its claim, after accounting for the retainer, will be $15,000.00 or less.

The Debtor hired two firms as special counsel during the course of the case – Catalyst Law Group and Potomac Law Group. Neither were paid a retainer. The Debtor anticipates Catalyst and Potomac which each have a claim for $5,000 or less on the Petition Date.

The Subchapter V Trustee, Joli A. Lofstedt is also entitled to an administrative expense claim. As with KBDR, the Debtor expects the Subchapter V Trustee will be owed $5,000.00 or less on the Effective Date of the Plan.

Debtor anticipates cash on the Effective Date will be sufficient to pay all Administrative Claims in full. If it is insufficient, Debtor will make monthly payments to Class 1 until Class 1 is paid in full.

### C. CLASS 2: ALLOWED PRIORITY TAX CLAIMS

Debtor provided notice of the filing of this case to the IRS, and the taxing authorities for the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Ohio, Tennessee, Utah, Virginia, Washington, the Town of Telluride, and the District of Columbia. The Debtor did not schedule any outstanding pre-petition tax liability to any of those taxing authorities.

Proofs of claim have been filed by the Washington Department of Revenue, the Ohio Department of Taxation, and the IRS.

The Washington Department of Revenue filed a claim for $4,195.56, of which $3,270.79 is entitled to priority. The Debtor will pay the priority portion of that claim on the Effective Date. The sum of $924.77 will be treated as an allowed general unsecured claim in Class 9.

The Ohio Department of Taxation filed a claim for $3,082.04, of which $2,102.16 is entitled to priority. The Debtor will pay the priority portion of that claim on the Effective Date. The sum of $979.88 will be treated as an allowed general unsecured claim in Class 9.

The IRS filed a proof of claim for $2,200, of which $1,400 is entitled to priority. The Debtor will pay the priority portion of that claim on the Effective Date. The sum of $800.00 will be treated as an allowed general unsecured claim in Class 9.

## **SECURED CLAIMS**

4.1 **CLASS 3. Allowed Secured Claim of GZ Impact Fund I, L.P., d/b/a Greenline Ventures ("Greenline").** The Class 4 Secured Claim consists of the Allowed Secured Claim of Greenline. Class 4 is impaired by the Plan. Greenline filed a secured proof of claim in the sum of $2,009,898.77, which amount Debtor disputes. Greenline shall have an allowed secured claim in the sum of $1,659,809.80, which claim shall accrue interest at the rate of 11.5% per annum. That claim will be amortized over the course of 30-years, with the first payment due within 14-days after the Effective Date, and each subsequent payment made 30-days thereafter. The balance will be due and payable within 3-years of the Effective Date. The Debtor shall make equal monthly payments to Greenline of $16,436.95 until the Debtor satisfies the balance due by re-financing or otherwise. Upon payment of the allowed claim in full, Greenline shall release its lien on the Debtor's assets.

4.2 **Class 4. Claim of B Side Capital, d/b/a Colorado Lending Source ("B Side").** Class 4 consists of the claim of B Side. B Side filed a secured claim in the sum of $14,028.82 on account of funds loan on or around February 7, 2018. B Side, however, never perfected its lien in the State of Delaware, where the Debtor has been incorporated for years. As a result, the Debtor disputes B Side's secured status. To the extent B Side's

6

secured claim is allowed, the Debtor agrees that B Side's allowed secured claim shall accrue interest at the rate of 11.5% per annum, and be paid in full by the Debtor making equal monthly payments of $462.61 for 36-months. The first payment shall be due within 14-days after entry of a final, non-appealable order confirming the secured status of B Side's claim, and shall continue for the 36-months thereafter. Upon either (a) completion of the payments required under this Plan; or (b) entry of a final, non-appealable order denying B Side's secured claim, B Side shall release its lien on the Debtor's assets. In the event B Side is to determined to not have a secured claim, it will be treated as an allowed general unsecured claim in the sum of $14,028.82 in Class 9.

    4.3    **Class 5. Claim of First Southwest Community Fund ("First Southwest").** Class 5 consists of the claim of First Southwest, who has filed a secured claim in the sum of $72,808.00. As with B Side, the Debtor disputes the secured status of First Southwest because it never perfected its lien against the Debtor's assets in the State of Delaware. To the extent First Southwest's secured claim is allowed, the Debtor agrees that First Southwest's allowed secured claim shall accrue interest at the rate of 11.5% per annum, and be paid in full by the Debtor making equal monthly payments of $2,400.92 for 36-months. The first payment shall be due within 14-days after entry of a final, non-appealable order confirming the secured status of First Southwest's claim, and shall continue for the 36-months thereafter. Upon either (a) completion of the payments required under this Plan; or (b) entry of a final, non-appealable order denying First Southwest's secured claim, First Southwest shall release its lien on the Debtor's assets. In the event First Southwest is determined to not have a secured claim, it will be treated as an allowed general unsecured claim in the sum of $72,808.00 in Class 9.

    4.4    **Class 6. Allowed Claim of The S Group.** The S Group claims a lien on the Debtor's inventory by virtue of a UCC 1 Financing Statement which was filed with the Delaware Secretary of State of May 17, 2024. To that end, The S Group filed a secured proof of claim in the sum of $3,997,436.55. The S Group is also holding certain of the Debtor's inventory in its possession, which inventory is the subject of a Motion for Relief from Automatic Stay and an adversary proceeding initiated by The S Group. The S Group shall have an allowed claim in the sum of $3,997,436.55, which The S Group shall offset by selling the inventory in its possession and applying the proceeds of that

sale to its claim. The remainder of The S Group's claim will be treated as an allowed unsecured claim in Class 9 because (a) The S Group perfected its lien on assets within 90-days of the Petition Date and said lien is therefore avoidable; and (b) The S Group's claim is wholly unsecured because the value of the assets subject to its lien does not exceed the value of the liens ahead of it in priority. As a result, and after selling the inventory in its possession, The S Group shall have an allowed general unsecured claim in Class 9 for the remaining amount.

  4.5 **Class 7. Allowed Claim of WebBank (Shopify).** WebBank funded a loan for the Debtor on behalf of Shopify. WebBank did not file a proof of claim. WebBank shall have an allowed claim on account of that loan in the sum of $375,076.00. Because that WebBank loan is inferior in priority to the Class 3 claim of Greenline, and because the value of the assets subject to WebBank's lien do not exceed the value of the liens ahead of it, WebBank shall have an allowed general unsecured claim in the sum of $375,076.00 in Class 9.

  4.6 **Class 8. Allowed Claim of WebBank (PayPal).** WebBank funded a loan for the Debtor on behalf of PayPal. WebBank did not file a proof of claim. WebBank shall have an allowed claim on account of that loan in the sum of $47,780.00. Because that WebBank loan is inferior in priority to the Class 3 claim of Greenline, and because the value of the assets subject to WebBank's lien do not exceed the value of the liens ahead of it, WebBank shall have an allowed general unsecured claim in the sum of $47,780.00 in Class 9.

V. <u>UNSECURED CLAIMS AND EQUITY</u>

  5.1 - **CLASS 9. General Unsecured Creditors**. Class 9 consists of those unsecured creditors of the Debtor who hold Allowed Claims that were either scheduled by the Debtor as undisputed, or subject to timely filed proofs of claim to which the Debtor does not successfully object. Class 9 is impaired by the Plan. A list of the Class 9 Claimants is attached hereto as Exhibit A. Class 9 claimants shall receive payment of their Allowed Claims as follows:

    a. Class 9 shall receive payments quarterly, upon the Debtor having sufficient cash flow and resources to make a distribution to general unsecured creditors, of 25% of its ending cash balance at the end of a calendar quarter. As

described in the Debtor's projections, the Debtor estimates that it will be able to make distributions to general unsecured creditors equal to 25% of its ending cash balance at the end of 4th quarter in 2027 and at the end of the 3rd quarter in 2028. The Debtor will also pay all of its ending cash balance above $200,000 in its bank accounts to general unsecured creditors at the end of the 4th quarter of the 4th and final year of the Plan. Payments shall be made on the 15th day after the end of the quarter which funds shall be paid to allowed general unsecured creditors *pro rata*.

      b.    The Debtor's projections, attached hereto as Exhibit B, reflect the basis for the payment structure described above. The Debtor has to purchase its inventory via a lump sum payment which it then sells over time. As a result, the Debtor's ending cash balance in a given month or quarter is not a proper illustration of "projected net disposable income" as that term appears in 11 U.S.C. § 1191(b) because of the significant lump sum costs the Debtor incurs to maintain its inventory. The Debtor asserts that this proposed payment structure complies with 11 U.S.C. § 1191(b) and avoids the Debtor running into the same problems that caused this bankruptcy in the first place – lacking cash to buy inventory to support its operations.

      c.    The Debtor estimates that Class 9 Creditors will receive 10.3% on account of their claims, which calculation does not account for any reduction on account of The S Group claim after it sells the inventory in its possession. Upon request by any party in interest, the Debtor shall provide financial statements, including amounts disbursed to creditors in accordance with the Plan.

    5.2    **Class 10. Interests in Debtor.** Class 10 includes the interests in Debtor held by the its pre-confirmation shareholders. Class 10 is not impaired by this Plan. On the Effective Date of the Plan, Class 10 Interest Holders shall retain their interests in Debtor which they owned prior to the Petition Date.

      **VI.**    <u>**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**</u>

    6.1    Debtor assumes, the following executory contracts and unexpired leases as of the Effective Date:

      **6.1.1**    All contracts and leases previously assumed or for which a motion to assume is pending;

  **6.1.2** All leases and contracts that are not specifically rejected, including insurance contracts and open customer contracts

 6.2 Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases for which a motion to reject has been granted or is pending as of the Effective Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **45** days after the date of the order confirming this Plan.

## VII. FEASIBILITY OF THE PLAN

Debtor's Plan is feasible, subject to receipt of Debtor-in-Possession financing of $350,000.00 prior to confirmation of the Plan. The Debtor is currently negotiating said financing. The financing is necessary to allow the Debtor to purchase the inventory that it needs to continue its operations.

As noted in the Debtor's projections, attached hereto as **Exhibit B**, the Debtor estimates payments to unsecured creditors of 10.3% over the course of 4-years – subject to the explanation regarding The S Group's claim in Section 5.1(c) above . As evidenced by the projections, Debtor anticipates that its income will be positive each year of the Plan, and will generate sufficient revenue to meet its obligations under the Plan. The Debtor has used its best efforts to prepare accurate projections.

For the absence of doubt, the projections include an estimated repayment on account of the yet to be completed financing. Further, the Debtor's projections provide an estimate of what will be repaid to general unsecured creditors. In the event the Debtor exceeds its projections, creditors will do better than the estimate. In the Debtor does not exceed its projections, general unsecured creditors will do worse.

In light of the above, the Plan is feasible as proposed.

## VIII. LIQUIDATION ANALYSIS

The principal alternative to a Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the Chapter 7 Trustee would take over control of the Debtor's assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

As noted above and in the Liquidation Analysis attached hereto as **Exhibit C**, in a liquidation in Chapter 7, in a liquidation, nothing would be available for general unsecured creditors. By contrast, Debtor proposes a Plan which estimates paying creditors the sum of $540,693.06 over 4 years via this Plan. Thus, the projections show a much greater benefit to general unsecured than a liquidation.

## IX. TAX CONSEQUENCE

Debtor is not providing tax advice to creditors or interest holders. **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtor or its counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.** Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

## X. IMPLEMENTATION OF THE PLAN

11.1 - **Effectuating the Plan.** On the Effective Date of the Plan, Kelly Watters, the President and Chief Merchandising Officer of the Debtor, shall be appointed pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan.

11.2 - **Effective Date.** The Plan will become effective on the date the Bankruptcy Court enters its Order confirming the Plan and said Order becomes final and non-appealable (the "Effective Date").

11.3 - **Disputed Claims.** Any claimant or Debtor may file an objection to any claim no later than 45 days following the Effective Date. Debtor shall have standing to commence and prosecute any objection to claim.

11.4 - **Administrative Expense Bar Date.** Any creditor seeking allowance and payment of an administrative expense priority claim must do so no later than 45 days following the Effective Date.

11.5 - **Final Decree.** Debtor will request entry of a final decree within 180 days of the Effective Date.

11.6 - **Post Confirmation Reporting.** Following confirmation of the Plan, upon request of any party in interest, Debtor shall provide quarterly financial statements summarizing all distributions made in accordance with the Plan. To the extent the Plan is subject to a non-consensual confirmation, the Subchapter V Trustee shall make all distributions, and the Subchapter V Trustee shall file post-confirmation quarterly reports with the Bankruptcy Court, and shall mail a copy of such reports to the Office of the United States Trustee.

11.7 - **Discharge.** If Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that Debtor will not be discharged of any debt:

(i) imposed by this Plan; or
(ii) to the extent provided in § 1141(d)(6).

For the absence of doubt, if the Plan is confirmed under § 1191(a) and the discharge enters on the Effective Date, the automatic stay will terminate as provided in 11 U.S.C. § 362(c)(2)(C).

If Debtor's Plan is confirmed through a nonconsensual confirmation under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code, and the creditors' rights in the event of default may be greater. Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

11.8 - **Contractual Relationship.** The Plan, upon confirmation, constitutes a new contractual relationship by and between Debtor and its creditors. In the event of a default by Debtor under the Plan, including failure to timely file and pay any post-petition taxes, creditors shall be entitled to enforce all rights and remedies against Debtor for breach of contract, the Plan. Any secured creditor claiming a breach of the Plan by Debtor will be able to enforce all of their

rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by Debtor must provide written notice to Debtor and its counsel of the claimed default, the notice must provide Debtor a ten (10) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan. Upon Debtor's failure to cure the default within such ten-day period, the creditor may proceed to exercise their rights and remedies under applicable State and Federal Law, including seeking to enforce the terms of the Plan or conversion of Debtor's case to a case under Chapter 7. In the event Debtor's Plan is confirmed through a nonconsensual confirmation under 11 U.S.C. § 1191(b), creditors may have greater rights in the event of default, as debts are not discharged until the completion of all payments due within the first three years of the Plan.

11.9 - **Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases which were entered into by Debtor pre-petition, and not assumed by order of the Bankruptcy Court, are assumed as of the Effective Date of the Plan.

11.10 - **Revestment.** The entry of an Order confirming this Plan shall revest in Debtor all property of the respective estates free and clear of all liens except those specifically set forth in the Plan.

11.11 - **Retention of Jurisdiction**. Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

    a.    Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

    b.    Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(1), including compensation of the parties entitled thereto;

    c.    Resolution of any disputes regarding interpretation of the Plan;

    d.    Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

    e.    Modification of the Plan pursuant to 11 U.S.C. §1193;

    f.    Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor-in-Possession, by the representative of the estate or

     by a Trustee appointed pursuant to the Code;

  g. Adjudication of any cause of action brought by the Debtor-in-Possession, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §542-549.  This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code and

  h. Entry of a final decree.

11.12 - **Satisfaction of Claims.**  Except as otherwise required by or provided in this Plan, the Debtor shall receive a discharge on the confirmation date pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.13 - **Headings**.  The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

11.14 - **Notices.**  All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.  All communications will be deemed delivered when received at the following addresses:

  a. Western Rise, Inc.
    PO Box 1326
    Telluride, CO 81435

    With a copy to:
    Jonathan M. Dickey, Esq.
    Kutner Brinen Dickey Riley, P.C.
    1660 Lincoln St., Suite 1720
    Denver, CO 80264
    Email: jmd@kutnerlaw.com

  b. To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, otherwise, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

  c. To the IRS, by fax to the attention of Sal Rivera at (855)276-0907.

11.15 - **Unclaimed Payments**. If a person or entity entitled to receive a payment or distribution pursuant to this Plan, exclusive of the IRS, fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 18, within one (1) year of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.16 - **Subchapter V Trustee and Plan Payments**. If this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Trustee's services shall be terminated at such time as the Plan has been substantially consummated. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Trustee shall continue to serve as Trustee, and shall accept Plan payments from the Debtor and convey said payments as provided herein.

11.17 - **Substantial Consummation**. Pursuant to 11 U.S.C. § 1183(c)(2), within fourteen (14) days after the Plan has been substantially consummated, Debtor shall file a notice of the same with the Court, and serve the Subchapter V trustee, the United States trustee, and all parties in interest.

## XI. CONFIRMATION REQUEST

Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. §1191(a). The Court may confirm the Plan pursuant to § 1191(b) if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired under, and has not accepted, the Plan.

DATED: September 17, 2024.   **WESTERN RISE, INC.**

By: *s/Kelly Watters*
Kelly Watters, President

APPROVED AS TO FORM:

*s/ Jonathan M. Dickey*
Jonathan M. Dickey, #46981
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone: 303- 832-2400
Email: jmd@kutnerlaw.com

ATTORNEYS FOR WESTERN RISE, INC.

APPENDIX
**DEFINITIONS**

Administrative Claim shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2) of the Bankruptcy Code.

Allowed Claim shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

Allowed Secured Claim shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

Avoidance Actions means each Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable

subordination under §510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

<u>Claim</u> shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

<u>Class</u> shall mean any Class into which Allowed Claims are classified pursuant to Article III.

<u>Class 1-10 and Claims and Interests</u> shall mean the Allowed Claims and Interests so classified in Part III.

<u>Code</u> shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

<u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

<u>Court</u> shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

<u>Disputed Claim</u> shall mean any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

<u>Effective Date of the Plan</u> shall mean fourteen days after the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

<u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

<u>Petition Date</u> shall mean the date on which the voluntary petition was filed by the Debtor on June 19, 2024.

<u>Plan</u> shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

<u>Priority Claim</u> shall mean any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

<u>Professional Fees</u> shall mean the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a Professional Person.

<u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

<u>Tax Claim</u> shall mean any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

<u>Unclassified Priority Claims</u> shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

<u>Other Definitions</u>. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein

## CERTIFICATE OF SERVICE

      I certify that on September 17, 2024, I served a complete copy of the foregoing **PLAN OF REORGANIZATION DATED SEPTEMBER 17, 2024 FOR SMALL BUSINESS UNDER CHAPTER 11, SUBCHAPTER V** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Paul Moss, Esq.
U.S. Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294
Paul.Moss@usdoj.gov

Joli A. Lofstedt, Esq.
Subchapter V Trustee
P.O. Box 270561
Louisville, CO 80027
joli@jaltrustee.com

Lacey S. Bryan, Esq.
Markus Williams Young & Hunsicker, LLC
1775 Sherman Street
Suite 1950
Denver, CO 80203
lbryan@markuswilliams.com

Amalia Y. Sax-Bolder, Esq.
Brownstein Hyatt Farber Schreck, LLP
675 15th Street, Suite 2900
Denver, CO 80202
asax-bolder@bhfs.com

David B. Law, Esq.
Miller & Law, P.C.
1900 West Littleton Blvd.
Littleton, CO 80120
dbl@millerandlaw.com

Bradley T. Hunsicker, Esq.
Markus Williams Young & Hunsicker, LLC
2120 Carey Avenue
Suite 101
Cheyenne, WY 82001
bhunsicker@marcuswilliams.com

Benjamin Lieber, Esq.
Potomac Law Group, LLC
1717 Pennsylvania Avenue NW
Suite 1025
Washington, DC 20006


**/s/Vicky Martina**
**Vicky Martina**